# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

BRIAN O.,

                                           Plaintiff,

    v.                                                      1:19-CV-983 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                           Defendant.

---

JOSEPHINE GOTTESMAN, ESQ., for Plaintiff
KEVIN M. PARRINGTON, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 7).

## I.  PROCEDURAL HISTORY

On April 5, 2018, plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning January 2, 2018. (Administrative Transcript ("T") 71, 111-12). Plaintiff's application was denied initially on July 16, 2018. (T. 74-77). Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Sandra R. DiMaggio Wallis on December 4, 2018. (T. 26-53, 86). At the hearing, the ALJ heard testimony from plaintiff, as well as vocational expert ("VE") Renee B. Jubrey. (T. 26-53). On March 11, 2019, the ALJ issued an order denying

plaintiff's claim. (T. 10-22). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on June 11, 2019. (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of

2

the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

    **B.**    **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859

F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

### III. FACTS

Plaintiff was born on October 4, 1967, making him 51 years old on the date of the administrative hearing.  (T. 32).  He lived at home with his wife and her two daughters.  (T. 32, 41).  Plaintiff previously obtained some education at the college level, and worked as a truck driver until January 2, 2018.  (T. 32-33).

According to the plaintiff, various medical conditions prevented him from continuing to work full-time.  The pain and physical limitations in his foot, back, and shoulder precluded his ability to perform the job duties of a truck driver.  (T. 34-35).  Due to his pain, plaintiff had to move around constantly; he could only stand for approximately ten minutes at a time, and sit for five to ten minutes.  (T. 36).  It was "very difficult" for plaintiff to climb stairs.  (T. 37).  Plaintiff had trouble sleeping through the night, and took naps during the day.  (T. 37, 39).  Household chores were

difficult to perform; he could not vacuum, take out the trash, or do the laundry. (T. 38, 41). His doctor limited him from lifting over 15 pounds of weight. (T. 35). On a typical day, plaintiff usually watched television, played games on his phone, and socialized on Facebook. (T. 38-39). He drove, but very little. (T. 40). Plaintiff was a volunteer offensive line coach for a local semi-professional football team. (T. 41-42).

Plaintiff testified that he tried to obtain "medicine" for his pain, but was directed to treat with pain management. (T. 35). He declined steroid injections, and ultimately obtained his medical marijuana license from a physician in New York City. (*Id.*). The medical marijuana helped a "little bit." (*Id.*). He also used a hot tub, which alleviated his pain for a short duration. (T. 35-36). Laying down also helped, until he attempted to get up. (T. 36).

## IV. THE ALJ'S DECISION

After reviewing the procedural history of the plaintiff's application and stating the applicable law, the ALJ found that plaintiff had not engaged in substantial gainful activity ("SGA") since his disability onset date. (T. 13). At step two of the sequential evaluation, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine, status post laminectomy surgeries (two); degenerative joint disease, bilateral shoulders; and posttraumatic arthritis, left ankle and foot. (*Id.*). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment. (T. 15).

At step four, the ALJ found that plaintiff had the RFC for light work, as defined in 20 C.F.R. §§ 404.1567(b), except the work could not require climbing ladders, ropes

or scaffolds, and no more than occasional kneeling, crouching, crawling or climbing of ramps and stairs. (T. 15). Plaintiff was further limited to working in an environment that allowed him to avoid exposure to unprotected heights, hazardous machinery, and vibration. (*Id.*).

Next, the ALJ found that plaintiff had no past relevant work. (T. 20). However, at step five, using the Medical Vocational Guidelines as a "framework," and the VE's testimony, the ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (T. 21-22). Thus, the ALJ found that plaintiff was not disabled. (T. 22).

## V.    ISSUES IN CONTENTION

Plaintiff raises three arguments:

1. The ALJ's RFC finding was not supported by substantial evidence. (Plaintiff's Brief ("Pl.'s Br.") at 20-23) (Dkt. No. 13).

2. The ALJ did not correctly evaluate plaintiff's credibility. (Pl.'s Br. at 23-27).

3. The ALJ did not correctly evaluate the medical and non-medical evidence of record. (Pl.'s Br. at 27-28).

The Commissioner contends that the ALJ sufficiently evaluated the evidence of record, and that her decision was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 19-19) (Dkt. No. 14). For the reasons set forth below, the court concludes that the ALJ's RFC determination was not supported by substantial evidence. As a result, the ALJ's analysis at step five and the ultimate finding that plaintiff was not disabled were tainted. Accordingly, the court orders a remand for further

administrative proceedings to adequately develop and assess the medical evidence as necessary, in order to determine an RFC that is properly supported.

## DISCUSSION

### VI.     RFC/EVALUATING MEDICAL EVIDENCE

    **A.     Legal Standards**

        **1.     RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019);

*Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.   **Evaluating Medical Evidence**

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion."  *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors."  20

C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's

9

opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### B. Application

Plaintiff's first and most persuasive argument contends that the ALJ's RFC for modified light work is not supported by substantial evidence. In order to perform the work described by the ALJ, plaintiff would be required to, among other things, stand and walk for up to 6 hours a day, and sit for up to 2 hours. *See* 20 C.F.R. §§ 416.967(b), 404.1567(b); *Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010) ("[l]ight work requires the ability to lift up to 20 pounds occasionally, lift 10 pounds frequently, stand and walk for up to 6 hours a day, and sit for up to two hours"). Plaintiff argues that the record fails to support plaintiff's ability to fulfill such exertional requirements. The court agrees.

In rendering her RFC determination, the ALJ relied on a medical opinion prepared by consultative examiner Trevor Litchmore, M.D. (T. 345). On July 9, 2018, Dr. Litchmore performed a physical examination of the plaintiff. Among his various findings, Dr. Litchmore observed plaintiff to have a normal gait and stance, with the ability to walk on his heels and toes without difficulty. (T. 346). Plaintiff required no assistance changing for the exam or getting on and off the examination table. (*Id.*). He was able to rise from the chair without difficulty. (*Id.*). Dr. Litchmore found plaintiff

to have some limited range of motion in his cervical and lumbar spine, but full range of motion in his shoulders, elbows, forearms, and wrists. (T. 347). Plaintiff's joints were stable and nontender. (*Id.*). He exhibited full strength in the upper and lower extremities, with no evident muscle atrophy. (*Id.*). Plaintiff retained the ability to unzip a zipper, untie a shoelace, and unbutton a button. (*Id.*). Dr. Litchmore noted plaintiff's full grip strength. (*Id.*).

Based on his physical examination of the plaintiff, Dr. Litchmore opined that plaintiff would have "limitation in terms of activities that require repetitive twisting and turning motion of both hands in the context of his carpal tunnel syndrome." (T. 348). He also stated that plaintiff would have "limitation as it relates to lifting and carrying heavy objects in the context of his chronic back and neck pain." (*Id.*). Last, Dr. Litchmore stated that plaintiff would have "limitation in terms of walking up and down ramps and stairs, climbing, or [sic] within the context of his chronic neck and back pain." (*Id.*).

In evaluating Dr. Litchmore's opinion, the ALJ found "unusual" the absence of findings or complaints about plaintiff's left ankle and foot injury, which was "described in very different terms by [plaintiff's treating orthopedist], who followed him for this condition over the period in question[.]" (T. 17). Nevertheless, the ALJ found the absence of any specific sitting, standing, or walking limitations in Dr. Litchmore's opinion to be consistent with plaintiff's ability to perform the exertional requirements of light work. (T. 19).

The record otherwise lacks any formal medical opinions, including from

plaintiff's treating physicians.  However, the ALJ considered some of the "more casual" assessments found in the administrative record.  For example, the ALJ considered a comment by plaintiff's treating orthopedist, Dr. Perkins, that "[plaintiff] can do sedentary duties . . . he should not lift heavy or continuously." (T. 19).  The ALJ found Dr. Perkin's assessment "somewhat persuasive but only to the extent that [plaintiff] would be limited in his ability to lift." (*Id.*).

The ALJ further considered a statement, prepared in the context of plaintiff's workers' compensation claim, by independent medical examiner Dr. Chiarmonte.  In March 2018 Dr. Chiarmonte opined that plaintiff could work "with restrictions of no lifting over 15-20 pounds, limited sitting, [and] no repetitive use of bilateral shoulders and right elbow." (T. 218).  After acknowledging that Dr. Chiarmonte's opinion was the only examiner's[1] opinion that placed any defined, relevant functional limitations on plaintiff's capacity for work, the ALJ found it consistent with the other opinions of record that did not "explicitly place[ ]" limitations on plaintiff's ability to stand or walk. (T. 19).

The Second Circuit has made clear that where "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required[.]" *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations

---

[1]The state agency's medical consultant determined that plaintiff was capable of a full range of medium work, including the ability to lift and carry 50 pounds on occasion, 25 pounds frequently, and stand and walk for a total of six hours in an eight hour day. (T. 16, 65).  The ALJ rejected the agency's determination, finding that the evidence before her was persuasive of a more restrictive residual functional capacity. (T. 16).

omitted).  However, under such circumstances an "RFC assessment will be sufficient only when the record is 'clear' and contains 'some useful assessment of the claimant's limitations from a medical source.'"  *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 293 (W.D.N.Y. 2018) (quoting *Muhammad v. Colvin*, No. 6:16-CV-06369, 2017 WL 4837583, at *4 (W.D.N.Y. Oct. 26, 2017)); *see also Martin v. Comm'r of Soc. Sec.*, No. 6:18-CV-06365, 2020 WL 1322572, at *5 (W.D.N.Y. Mar. 20, 2020) (acknowledging the *Monroe* decision, but nevertheless ordering remand because the record was "devoid of any assessment of plaintiff's exertional limitations," and contained no "useful discussion of such limitations.").

In this case, the record lacks a useful assessment of plaintiff's limitations, particularly with respect to his ability to fulfill the exertional requirements of light work.  Other than the opinion rendered at the state agency level, which the ALJ implicitly found less than persuasive, there is no evidence that discusses plaintiff's ability to stand or walk during the course of an eight-hour workday.  Dr. Litchmore's failure[2] to discuss plaintiff's limitations in these functional abilities, or lack thereof, does not constitute substantial evidence that plaintiff could perform them without restriction.  *See Frank v. Comm'r of Soc. Sec.*, No. 5:17-CV-103, 2019 WL 430887, at *7 (D. Vt. Feb. 4, 2019) ("[T]he absence of evidence indicating that plaintiff can [perform a relevant functional ability] does not constitute substantial support for the

---

[2]Although Dr. Litchmore vaguely assessed that plaintiff would have "limitations" for walking up and down ramps and stairs, he otherwise failed to discuss plaintiff's capacity for sitting, standing, or walking.  (T. 348).  The court also notes a typographical error in the last sentence of Dr. Litchmore's medical source statement, presumably omitting a final function in which he opined plaintiff endured some degree of limitation.  (*Id.*).

ALJ's RFC determination."); *Rodgers v. Colvin*, No. 16-CV-6739, 2018 WL 446220, at *3 (W.D.N.Y. Jan. 17, 2018) (where consultative examiner did not address relevant functional abilities, the ALJ could not assume there were no limitations); *Jermyn v. Colvin*, No. 13-CV-5093, 2015 WL 1298997, at *20 (E.D.N.Y. Mar. 23, 2015) ("[T]he ALJ was not permitted to construe the silence in the record as to Plaintiff's functional capacity as indicating support for his determination as to Plaintiff's limitations."). It was improper for the ALJ to conclude that Plaintiff's only limitations were those vaguely identified in the consultative examiner's opinion.

Moreover, it is not "clear" from the record that plaintiff could perform the walking or standing exertions required in order to perform light work.[3] Plaintiff maintained, at both the state agency level and at his administrative hearing, that his ability to stand or walk for long periods of time was significantly limited by his back pain, as well as his left foot condition. (T. 36, 150). His treating physicians often observed him to walk with an "abnormal" or "antalgic" gait. (T. 242, 245, 248, 251, 518, 522, 539). On several occasions, plaintiff displayed steppage due to left foot drop, as well as left lower extremity weakness. (T. 245, 248-49, 522, 571). His left leg exhibited muscle atrophy. (T. 242, 248). On September 27, 2018, plaintiff sought a

---

[3] The court recognizes that light work can alternatively involve "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). Nevertheless, there is even less support in the record that plaintiff could perform such activities in the course of gainful employment. The only assessment regarding plaintiff's ability to sit came from workers' compensation examiner Dr. Chiarmonte, who opined that plaintiff could work under circumstances including "limited sitting." (T. 218). Moreover, plaintiff's capacity for pushing and pulling is called into question by Dr. Litchmore's vague opinion that plaintiff would have "limitation" for activities involving repetitive twisting and turning motions with the hands (T. 348), and Dr. Chairmonte's opinion that plaintiff must avoid repetitive use of his shoulders and right elbow. (T. 218).

second opinion for his left foot and ankle. (T. 517). At that time, orthopedic surgeon Dr. Kelmanovich recommended at CT scan and possible future arthrodesis[4] at the transverse tarsal joint. (T. 519). On November 30, 2018, plaintiff presented to the emergency department complaining of numbness in his right foot and ankle, and an inability to walk due to significant back pain. (T. 570). On December 5, 2018, Dr. Perkins acknowledged plaintiff's chronic, worsening symptoms of back pain, and scheduled plaintiff for a lumbar fusion at various levels. (T. 580). Based on this medical evidence, this is not the type of case where plaintiff's impairments "were so minimal that the ALJ could permissibly make a common sense judgment as to Plaintiff's [physical RFC]." *Johnson v. Berryhill*, No. 1:16-CV-974, 2018 WL 3688313, at *4 (W.D.N.Y. Aug. 2, 2018); *see also Zayas v. Colvin*, No. 15-CV-6312, 2016 WL 1761959, at *4 (W.D.N.Y. May 2, 2016) ("Depending on the circumstances, like when the medical evidence shows only minor physical impairments, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment").

In sum, the ALJ attempted to craft an RFC primarily supported by her lay interpretation of plaintiff's imaging studies, "irregularities" among the physical examination findings of plaintiff's various treating providers, a lack of any recommendation for aggressive treatment,[5] and the absence of any opinion regarding plaintiff's capacity for standing and walking throughout the course of an eight-hour

---

[4]Arthrodesis is the surgical immobilization of a joint so that the bones grow solidly together. *See https://www.merriam-webster.com/dictionary/arthrodesis*.

[5]Arguably, the recommended spinal fusion and arthrodesis constitute aggressive treatment.

work day. Because the evidence considered by the ALJ failed to discuss, or even identify, plaintiff's capacity for standing and walking, the record did support not the ALJ's RFC determination. *Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d at 293; *see also Quinto v. Berryhill*, No. 3:17-CV-24, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) ("[W]here the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual capacities . . . the Commissioner may not make the connection himself.") (citations omitted). On remand, the ALJ should further develop the record by obtaining medical opinion evidence specific to plaintiff's physical limitations, in order to determine whether plaintiff can fulfill the exertional requirements for light work.

## VII. REMAINING ARGUMENTS

Plaintiff has identified additional reasons why he contends the ALJ's decision was not supported by substantial evidence. However, because the court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. *See Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13-CV-06844, 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision and Order, and it is

**ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.

Dated: June 10, 2020

Andrew T. Baxter
U.S. Magistrate Judge